### STATE OF CONNECTICUT v. JOHN CONGER

BOGDANSKI, PETERS, HEALEY, ARMENTANO and WRIGHT, Js

Argued January 7—decision released April 7, 1981

*Richard T. Meehan, Jr.,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, was *Richard D. Arconti,* deputy assistant state's attorney, for the appellee (state).

WRIGHT, J. Acting on a tip, state police stopped a truck driven by the defendant as it entered Interstate 84 westbound in Danbury on March 10, 1979. Subsequent investigation revealed the truck, as well as two other vehicles located at the defendant's residence, to be stolen. After pleading not guilty to an information charging three counts of second degree larceny by receiving and retaining stolen property,[1] the defendant was found guilty by a jury on all counts. His appeal focuses on the legality of the initial stop of the truck by the state police, the subsequent search of the two vehicles at his residence

---

[1] "[General Statutes] Sec. 53a-119. LARCENY DEFINED. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or witholds such property from an owner. Larceny includes, but is not limited to . . . (8) Receiving stolen property. A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner."

"[General Statutes] Sec. 53a-123. LARCENY IN THE SECOND DEGREE: CLASS D FELONY. (a) A person is guilty of larceny in the second degree when: (1) The property consists of a motor vehicle, (2) the value of the property or service exceeds five hundred dollars, or (3) the property, regardless of its nature or value, is taken from the person of another."

and the refusal of the prosecution to reveal the identity of the informer who provided the state police with the tip.

Before his trial, the defendant moved to suppress all evidence collected as a result of his arrest and the searches,[2] first of the truck which he was driving and later of two vehicles at his residence. The state resisted the motion solely by relying on recent cases which limit the right of a defendant to invoke the exclusionary rule where he has no legitimate expectation of privacy in the premises searched. See, e.g., *Rakas* v. *Illinois,* 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). After an evidentiary hearing the court *(Moraghan, J.)* concluded that the defendant had no legitimate expectation of privacy in the vehicles, presumably because they were stolen. Thus the motion to suppress was denied.

If the admissibility of the evidence turned entirely on the narrow issue of whether the actual search of the vehicles was in violation of the fourth amendment, we would agree with the trial court's ruling on the motion to suppress. *United States* v. *Salvucci,* 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980) ; *Rakas* v. *Illinois,* supra, 141 n.9. The motion, however, embraced at least two issues apart from the mechanical search of the vehicles which were never addressed by the court below. Because

---

[2] We use the term "search" as have the parties and the court below. The police intrusion now complained of amounted to the officers' obtaining the vehicle identification numbers from the three vehicles inspected. We note that the action of a lawfully present police officer peering through a motor vehicle windshield to view its vehicle identification number need not, under all circumstances, be justified by a showing of probable cause. See *State* v. *Colon,* 6 Conn. Cir. 722, 724–26, 316 A.2d 797 (1973) ; LaFave, Search and Seizure § 2.5 (d). This distinction is of little moment in the present case because the key issue here is whether the police were lawfully present when they viewed the number.

a resolution of these issues is essential to a determination of the admissibility of the challenged evidence and because each issue involves a number of factual determinations, we cannot say that the evidence was properly admitted on the basis of the court's ruling on the motion to suppress.

The first question presented by the motion to suppress but not addressed by the court concerns the legality of the initial stop of the defendant's truck as it entered onto Interstate 84. The defendant, in his written motion, argued that his "arrest was not made in compliance with Section 6-49[3] of the General Statutes, because the arresting officer . . . did not have a demonstrable reason to stop the motor vehicle in which the defendant was riding and subsequently search the vehicle and question the defendant." Although this portion of the motion focuses primarily on the legality of the defendant's arrest, we conclude that, fairly read in light of counsel's amplification at oral argument during the suppression hearing,[4] the motion challenged the legality of the initial stop. The court below apparently assumed that the defendant was precluded from challenging the initial stop because, as the

---

[3] General Statutes § 6-49 has been transferred and set out as § 54-1f. Subsection (b) of this statute provides that "[m]embers of the division of state police within the department of public safety or of any local police department or any chief inspector or inspector in the division of criminal justice shall arrest, without previous complaint and warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony."

[4] At the suppression hearing defense counsel said "I think that he has been aggrieved as a result of the search and consequently I think that his being stopped and arrested as a result of the illegal arrest can support his Motion to Suppress. I think under *Terry* v. *Ohio* [392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)] and *State* v. *Williams*, [157 Conn. 114, 249 A.2d 245 (1968), cert. denied, 395 U.S. 927, 89 S. Ct. 1783, 23 L. Ed. 2d 244 (1969)] and *Delaware* [v. *Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979)]

driver of a stolen vehicle, he had no "standing"[5] to raise a fourth amendment claim.[6] This approach misses the mark.

Stopping a motor vehicle and detaining the occupant constitutes a seizure within the meaning of the fourth and fourteenth amendments, even though the stop is limited and the resulting detention is quite brief. *Delaware* v. *Prouse,* 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). As such the stop must comport with objective standards of reasonableness, whether that amounts to probable cause or a less stringent test. Id., 654. See *United States* v. *Brignoni-Ponce,* 422 U.S. 873, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975); *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). *Rakas* v. *Illinois,* supra, does not teach otherwise, for in that case the defendants did not question the constitutionality of

certainly allow him to raise this issue of an illegal arrest and illegal stopping and illegal search, etc. And again because of the stopping and subsequent arrest, which we contend was illegal and consequently the fruits of that arrest were illegal and I would suggest that there is standing." In the same vein, counsel maintained that "if the officer had no reason for stopping the individual, consequently the arrest had no probable cause and anything emanating out of the arrest, should be suppressed."

[5] The present case illustrates a potential weakness of viewing as a matter of "standing" the principle that "rights assured by the Fourth Amendment are personal rights, [which] . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." *Rakas* v. *Illinois,* 439 U.S. 128, 138, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978), quoting *Simmons* v. *United States,* 390 U.S. 377, 389, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968). The preferred analysis dispenses with the distinct "standing" question. Instead, the issue becomes "whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it." *Rakas* v. *Illinois,* supra, 140.

[6] The court ruled that "I have heard nothing to convince me that the gentleman has any standing to file this motion or have it heard. The motion to suppress is denied on the question of standing of expectation of privacy."

the initial stop of their car. *Rakas* v. *Illinois,* supra, 150–51 (Powell, J., concurring). See LaFave, Search and Seizure § 11.3 (1980 Cum. Sup., pp. 63–64). The defendant, as an occupant of the truck, has an interest in continuing his travels without government intrusion. Thus his fourth amendment rights could have been violated by the stopping of the truck even though the truck was stolen. The court below erred when it failed to determine, after hearing the testimony and argument at the suppression hearing, whether the stop of the defendant's truck in the present case was reasonable under the fourth amendment.

The evidence collected from the two cars at the defendant's residence presents a problem similar to that discussed above. Again, the court restricted its determination at the pretrial suppression hearing to whether the defendant had "standing" to challenge the actual search of the two cars. While the court correctly concluded that the defendant could not assert fourth amendment rights with respect to the stolen cars, it left unanswered the question whether the police lawfully entered the defendant's property to conduct their inspection. At trial, this entrance was justified on the ground that the defendant had consented to it. Whether consent to search is voluntarily given or is the product of duress or coercion is a question of fact to be determined from the totality of all the circumstances. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). See generally LaFave, Search and Seizure § 8.2. The trial court *(Henebry, J.)* after hearing the conflicting testimony of a police officer and the defendant during a second suppression hearing conducted during the trial outside the presence of the jury, concluded that the consent was

voluntary. We cannot say that this determination was clearly erroneous. See Practice Book § 3060D. Thus, with respect to the second search, the trial court's action cured the error committed by the court during the pretrial suppression hearing when it failed to rule on the voluntariness of the defendant's consent to search.

This conclusion, however, does not end our inquiry concerning the admissibility of the vehicle identification numbers obtained from the two cars on the defendant's property. As we stated earlier, neither at the pretrial suppression hearing nor at the trial was the legality of the initial stop of the defendant on Interstate 84 ruled upon. If, on remand, it is determined that this stop was unconstitutional, then the question arises whether the evidence obtained during the consent search is subject to suppression as being the fruit of the poisonous tree. See *Wong Sun* v. *United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed 2d 441 (1963); LaFave, Search and Seizure § 11.4 (d). Final resolution of this issue must await a ruling, at the trial level, on the constitutionality of the initial stop of the defendant's vehicle.[7]

The defendant also claims that the trial court erred in not ordering the state to disclose the name of the informer who provided the initial tip to the police. In the typical case where an informant

___

[7] A new trial on all counts will be required only if the court concludes that the initial stop was unconstitutional. Such a conclusion will, of course, require new determinations regarding the admissibility of much of the crucial evidence in the case. If, on the other hand, the court on remand finds the initial stop to have been constitutional, then no new trial will be necessary. In this event the court should render a new judgment of conviction which will furnish a basis for further appellate review if desired. See *United States* v. *McSweaney,* 507 F.2d 298, 300–301 (9th Cir. 1974).

neither participated in nor witnessed the crime, there is no requirement that his identity be disclosed. *State* v. *West,* 178 Conn. 444, 445, 423 A.2d 117 (1979). See *State* v. *McDaniel,* 176 Conn. 131, 133, 405 A.2d 68 (1978). In the present case, however, the defendant claims a violation of his sixth amendment right to confrontation because the informant's out-of-court statements were allegedly used against him at trial. Upon a review of the record in this case, we disagree.

Several indirect references to the tip were elicited on cross examination of police officers by defense counsel. Because these references were all clearly responsive to the questions posed, they cannot now be invoked by the defendant as a basis for reversal. *State* v. *Brokaw,* 183 Conn. 29, 32–33, 438 A.2d 815 (1981).

The initial allusion to the tip which occurred during questioning by the state's attorney[8] may well have been excludable as hearsay had such a ruling been sought at trial. But we cannot hold that this single miscue required the state, in order to vindicate the defendant's right to confront his accusers, to disclose the informant's identity. Nor can we conclude that this reference deprived the defendant of a fair trial. The state did not directly rely on the substance of the tip to establish an element of the offense. Under these circumstances, the court did not commit error when it declined to order the informant's identity disclosed.

---

[8] "Q. [By Richard D. Arconti, deputy assistant state's attorney] And for what reason were you conducting a surveillance?

A. [By Trooper Michael Savino] We had a tip that there was a black four wheel drive pickup truck with a camper top back on it and that this vehicle was possibly stolen."

There is error, the judgment is set aside and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.