STATE OF CONNECTICUT *v.* ROBERT E. RICHARDSON
(12939)

PETERS, C. J., HEALEY, SHEA, CRETELLA and ARONSON, Js.

Argued May 12—decision released August 4, 1987

*Louis S. Avitabile,* special public defender, and *Denise Dishongh,* with whom, on the brief, was *Joshua R. Kricker,* for the appellant (defendant).

*John H. Gorman,* special assistant state's attorney, with whom were *Peter D. Markle,* assistant state's attorney, and, on the brief, *John A. Connelly,* state's attorney, for the appellee (state).

SHEA, J. A jury found the defendant guilty of illegal possession of narcotics in violation of General Statutes § 21a-279 (a).[1] In this appeal from the judgment rendered in accordance with the verdict, the defendant claims that the trial court erred: (1) in denying the defendant's motion to disclose the informant's identity, and in failing to hold at least an in camera hearing on his identity so the defendant could use the information to challenge the probable cause or articulable suspicion

[1] "[General Statutes] Sec. 21a-279. (Formerly Sec. 19-481). PENALTY FOR ILLEGAL POSSESSION. SUBSTITUTION OF MEDICAL TREATMENT FOR CRIMINAL SANCTIONS. (a) Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years, or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years, or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

claimed to justify the stop and search; (2) in not allowing the informant's identity to be disclosed despite the defendant's contention that the informant was a witness to the continuing crime of possession of narcotics; (3) in denying the defendant's motion for disclosure of the informant's identity even after the state had introduced evidence before the jury that there had been a complaint about the defendant, and that on the basis of that complaint the detectives had initiated an investigation concerning narcotics; and (4) in failing to allow the defendant to discover whether the informant was one of four people who had had access on the day of the crime to the car in which the defendant was arrested for possession of narcotics. We find no error.

From the evidence presented at the hearing on the defendant's pretrial motions, the court could reasonably have found the following facts. An informant saw the defendant sell a quantity of narcotics in the north end of Waterbury on May 30, 1985. Twenty minutes later the informant conveyed this information to Detectives William Howard Jones and Domingo Pietri. He also told them that the defendant had a large quantity of narcotics on his person, that he was driving a small blue vehicle bearing a specified registration number, and that he was heading to the Walnut Street area. The informant indicated that his information was based on personal observation. The detectives had known the informant for four years, and were aware that his information in the past had resulted in six arrests and convictions. Jones testified that he had known the defendant personally as a result of previous narcotics investigations and arrests.

At the trial before the jury evidence was presented of the following facts. After receiving a complaint concerning the defendant, the two officers, in an unmarked car, drove to the north end of Waterbury and observed the defendant driving a car matching the vehicle

described by the informant. They began following the defendant's car. They saw the car weave back and forth, and strike the curb of the sidewalk at least twice. The two officers also observed the defendant making fidgeting movements while he was driving in an erratic manner. After they had stopped the defendant's car, Pietri approached the car and saw the defendant take a plastic bag out of his right pants pocket and place it underneath the dashboard. The two detectives then arrested the defendant. The plastic bag removed from underneath the dashboard during the search of the vehicle was found to contain narcotics.

I

The defendant first claims that the trial court erred by denying his motion for disclosure of the informant's identity. According to the defendant, this disclosure was essential to allow him to challenge the probable cause or articulable suspicion relied upon by the police for the stop and search. In the alternative, the defendant argues that a judge must at least hold an in camera hearing to verify the existence of the informant and the credibility of his information. We reject both of these contentions.

The United States Supreme Court's decision in *Roviaro* v. *United States,* 353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957), provides a starting point for our analysis of how courts should balance the state's interest in protecting informants against the defendant's interest in obtaining information useful in conducting his defense. Courts have recognized an informant's privilege. "What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. . . . The purpose of the privilege is the furtherance and protec-

tion of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." (Citations omitted.) Id., 59.

While an informant's or government's privilege exists, it must yield where it would interfere with a defendant's right to a fair trial. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id., 60–61.

Two factors must be kept in mind in evaluating the significance of *Roviaro* for the claim under consideration. First, in *Roviaro,* the informant was a participant in the crime charged, and his testimony was sought at the trial itself rather than at a suppression hearing. Second, *Roviaro* involved the application of federal evidentiary rules, and the decision did not rest on constitutional grounds. *State* v. *Harris,* 159 Conn. 521, 527, 271 A.2d 74 (1970), cert. dismissed, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630 (1971).

*Roviaro* did not address the problem of whether courts should disclose the identity of informants who supply information to the police that ultimately results in an arrest, but who are not participants in the crime charged. The *Roviaro* decision, however, does offer an intellectual framework for analyzing such an issue. It suggests that the question of disclosure should be determined on a case by case basis, and advocates the use of a balancing test. "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance

renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, and possible significance of the informer's testimony, and other relevant factors." *Roviaro* v. *United States,* supra, 62.

## A

The claim that a defendant is entitled to the disclosure of the identity of an informant to enable him to challenge the basis for probable cause relied upon by the police in making an arrest or search has been rejected by the United States Supreme Court in *McCray* v. *Illinois,* 386 U.S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62, reh. denied, 386 U.S. 1042, 87 S. Ct. 1474, 18 L. Ed. 2d 616 (1967). In that case the court made a sharp distinction between informants who are participants in the crime itself and whose testimony is vital at the trial in determining guilt or innocence, and those informants who merely supply information useful in establishing probable cause for an arrest or search. "What *Roviaro* thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials. Much less has the Court ever approached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake." Id., 311; *State* v. *Conger,* 183 Conn. 386, 392–93, 439 A.2d 381 (1981); *State* v. *West,* 178 Conn. 444, 445–46, 423 A.2d 117 (1979); *State* v. *McDaniel,* 176 Conn. 131, 133–34, 405 A.2d 68 (1978); *State* v. *Harris,* supra, 525–30; *State* v. *Hall,* 28 Conn. Sup. 331, 334–35, 260 A.2d 411 (1969).

In *State* v. *Harris,* supra, this court followed *McCray* in determining that the identity of an informant could

be withheld where he was not a participant in the crime with which the defendant was charged and his testimony was not essential to assure a fair determination of guilt or innocence at the trial itself. "In the present case, in contrast to the *Roviaro* case, there is no suggestion that the informer was a participant in the crime with which the defendant was charged. Instead, the defendant indulges in surmises as to what information might be gleaned from an examination of the informer." *State* v. *Harris,* supra, 529; *State* v. *Conger,* supra; *State* v. *West,* supra; *State* v. *McDaniel,* supra; *State* v. *Hall,* supra.

There are important reasons for treating a motion to disclose an informant's identity differently at a suppression hearing than at a trial. " 'We must remember also that we are not dealing with the trial of the criminal charge itself. There the need for a truthful verdict outweighs society's need for the informer privilege. Here, however, the accused seeks to avoid the truth. The very purpose of a motion to suppress is to escape the inculpatory thrust of evidence in hand, not because its probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel enforcement officers to respect the constitutional security of all of us under the Fourth Amendment. *State* v. *Smith,* 37 N.J. 481, 416, 181 A.2d 761 (1962). If the motion to suppress is denied, [the] defendant will still be judged upon the untarnished truth.' " *McCray* v. *Illinois,* supra, 307, quoting *State* v. *Burnett,* 42 N.J. 377, 386–87, 201 A.2d 39 (1964).

Judge Friendly in *United States* v. *Comissiong,* 429 F.2d 834 (2d Cir. 1970), undertook a careful analysis of *McCray* v. *Illinois,* supra. He concluded: "In *McCray* v. *Illinois,* [supra], the Court dealt directly with the problem here presented. The decision at least establishes that disclosure of the identity of an informer is not *constitutionally* required even though his informa-

tion is the sole basis for probable cause." (Emphasis in original.) *United States* v. *Comissiong,* supra, 837; *Mapp* v. *Warden,* 531 F.2d 1167, 1173 (2d Cir. 1976).

There is even less reason to disclose the identity of informants for the purpose of a probable cause hearing where independent corroborating evidence exists. This independent evidence need not be sufficient to establish probable cause or articulable suspicion by itself. "In *Comissiong,* we sanctioned non-disclosure where '[t]he independent evidence, even though not adequate of itself to establish probable cause, constitutes a sufficient voucher against fabrication, although obviously not a complete one.' " *United States* v. *Carneglia,* 468 F.2d 1084, 1088 (2d Cir. 1972), cert. denied sub nom. *Inzerillo* v. *United States,* 410 U.S. 945, 93 S. Ct. 1391, 35 L. Ed. 2d 611 (1973); *Mapp* v. *Warden,* supra.

There was sufficient independent evidence in this case to protect the defendant against fabrication without disclosing the identity of the informant. The defendant contends that the informant's tip was the sole basis for the probable cause or articulable suspicion to stop and search the vehicle. The facts do not support the defendant's claim. Two police officers personally observed certain behavior of the defendant that independently corroborated the informant's tip. They knew about the defendant's prior involvement with narcotics, they saw him drive in an erratic and fast manner, and they observed his fidgety movements. Pietri watched the defendant remove the plastic bag, later found to contain narcotics, from his pocket and place it under the dashboard.

According to the United States Supreme Court in *McCray* v. *Illinois,* supra, 305, the defendant's ability to cross-examine any police officers involved in a case, and a trial judge's opportunity to evaluate their credi-

bility are sufficient safeguards in a suppression hearing in which the issue is probable cause rather than guilt or innocence. "In permitting the officers to withhold the informant's identity, the court was following well-settled Illinois law. When the issue is not guilt or innocence, but, as here, the question of probable cause for an arrest or search, the Illinois Supreme Court has held that police officers need not invariably be required to disclose an informant's identity if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant. This Illinois evidentiary rule is consistent with the law of many other States." Id.

We hold that the state is not required to disclose the identity of an informant at a suppression hearing in which probable cause or articulable suspicion is at issue, unless the trial court, in its discretion, concludes that such disclosure is necessary in order to support adequately the veracity of the police officers who profess to have relied upon the information furnished by the informant. *McCray* v. *Illinois,* supra, 305–308; *United States* v. *Comissiong,* supra, 838–39; see *State* v. *West,* supra, 445–46; *State* v. *McDaniel,* supra, 133–34; *State* v. *Burnett,* supra, 388.

### B

In the alternative, the defendant claims that the trial judge should have held an in camera proceeding to determine the existence of the informant, and to examine his credibility. We disagree. Whether to conduct an in camera examination is within the discretion of the trial judge, and this procedure is not mandated whenever the informant's identity is requested. *United States* v. *Fixen,* 780 F.2d 1434 (9th Cir. 1986); *United States* v. *Kerris,* 748 F.2d 610 (11th Cir. 1984); *United States* v. *Alexander,* 559 F.2d 1339 (5th Cir. 1977);

*United States* v. *Gonzalez,* 555 F.2d 308 (2d Cir. 1977). "Nonetheless, a district court need not conduct an in camera hearing whenever the identity of an informant is requested. *United States* v. *Kerris,* [supra, 614]. Rather, it is within the judge's discretion whether to hold such a hearing, id., and a decision denying a defendant's request for an in camera proceeding should be overturned only if there is an abuse of discretion." *United States* v. *Fixen,* supra, 1440.

Mere speculation that the informant's information will be helpful to the defense is not sufficient to mandate disclosure or an in camera hearing. *United States* v. *Kerris,* supra; *Lannom* v. *United States,* 381 F.2d 858, 861 (9th Cir. 1967); *State* v. *Johnson,* 162 Conn. 215, 229, 292 A.2d 903 (1972); *State* v. *Harris,* supra; *State* v. *Hall,* supra. A judge's denial of an in camera hearing is an abuse of discretion only when disclosure is "essential to a fair determination of a cause" at trial. *Roviaro* v. *United States,* supra, 61; *United States* v. *Fixen,* supra.

In determining whether to conduct an in camera proceeding a judge must balance the "public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro* v. *United States,* supra, 62. A defendant's interest in having a judge conduct an in camera proceeding is not of constitutional magnitude when an informant is a mere tipster who did not participate in the crime which is being charged. The state has a superior interest in protecting the identity of its informants when the truth of the testimony offered in proof of the crime itself is not implicated.

There are serious potential risks involved in conducting an in camera hearing to examine an informant. One should distinguish between in camera proceedings in which a judge merely examines documents or records,

and those which require the actual physical presence of an individual. In a number of cases we have indicated that trial judges should conduct in camera hearings to determine whether confidential psychiatric or rape crisis counseling records must be disclosed to vindicate a defendant's right of confrontation. *State* v. *Whitaker,* 202 Conn. 259, 271–72, 520 A.2d 1018 (1987); *State* v. *Pierson,* 201 Conn. 211, 225–26, 514 A.2d 724 (1986). During these in camera hearings great care is taken to protect the victim's right of confidentiality. *State* v. *Whitaker,* supra; *In re Robert H.,* 199 Conn. 693, 708–10, 509 A.2d 475 (1986).

Requiring an informant to attend an in camera hearing involves a substantial risk that his identity will be discovered. Such a hearing would normally require an informant to come to the courthouse. The defendant or his criminal associates may through a variety of means learn when the proceeding is taking place, and observe those who enter the courthouse at that time. Those people who attend the hearing may either intentionally or unintentionally leak information about the informant's identity. Not only may an in camera hearing endanger the informant's safety, but potential informants may be discouraged from revealing information if there is a significant likelihood that they must risk attending such a hearing. Many potential informants may be willing to trust one or two police officers to protect their identity but not the criminal justice system as a whole. In exercising its discretion about the need for an in camera hearing, a trial court should consider the risks that a hearing may present for an informant.

## II

The defendant contends that the informant was a witness to the continuing crime of possession of narcotics and, therefore, claims that the trial court erred in not allowing the informant's identity to be disclosed. If an

informant is either a participant in or a witness to the crime charged, his identity must be disclosed. *State* v. *Conger,* supra; *State* v. *West,* supra; *State* v. *McDaniel,* supra; *State* v. *Harris,* supra, 525–30; *State* v. *Hall,* supra. The determinative issue presented by this claim is whether the informant was a witness to the crime of possession of narcotics.

The informant was not present when the police stopped and arrested the defendant and searched the car. The trial court ruled that the elements of the crime of possession committed in the presence of the officers at the corner of Camp and Orange Streets could be proved without testimony of the informant and, therefore, denied disclosure of the informant's identity.

The defendant concedes that the informant was not present at the stop and search. He points out, however, that the substitute information charged the defendant with possession of narcotics at Waterbury, on May 30, 1985, without specifying that the crime was committed at the corner of Camp and Orange Streets. There was no bill of particulars indicating where in Waterbury the possession of narcotics had occurred. The defendant admits that the only connection of the informant to the crime was that the informant had seen the defendant in possession of narcotics in a white plastic bag twenty-five minutes before the stop and search by the police. The defendant maintains, however, that he was convicted of possessing the narcotics from the time he met the informant until he was arrested approximately twenty-five minutes later. He relies on the fact that the substitute information does not specify at what time or place the incident occurred to support his contention that he was convicted of continuous possession of narcotics for the entire twenty-five minute period of time.

The defendant urges us to rely on double jeopardy cases for our analysis of whether the offense in this case involves separate or continuous incidents. In *State* v. *Thompson,* 197 Conn. 67, 71–73, 495 A.2d 1054 (1985), we held that the state could bring separate prosecutions of a defendant in connection with two sales of narcotics which took place five days apart. We indicated that the five day interval was sufficiently long so that one could say that they constituted two separate transactions rather than a single continuous crime. Id., 73. In *State* v. *Goldson,* 178 Conn. 422, 425, 423 A.2d 114 (1979), we held that the state could not bring separate charges of being in possession of heroin, and of transporting heroin where the information and bill of particulars stipulated a single date and time for both offenses. It may be that in this case the state could not have brought one charge for possession of narcotics based on the informant's observations, and a second possession charge based on what the police detectives saw, although we need not decide that question. It is simply irrelevant whether the twenty-five minute time period would represent a single continuous transaction under double jeopardy analysis. Absent a valid double jeopardy claim, there is no constitutional requirement that we view the twenty-five minute time period as representing a continuing crime.

Since a double jeopardy analysis of what circumstances constitute separate or continuous crimes is inapplicable here, the issue is whether the informant was a witness to the crime of which the defendant was convicted as presented to the jury. The record contains no indication that the informant observed any of the events relied upon by the state at trial to establish the elements of the offense. *State* v. *Conger,* supra, 392–93. Detective Pietri's testimony that he saw the defendant remove a plastic bag, later found to contain narcotics, from his pocket and place it under the dashboard

of his car was sufficient to establish all the necessary elements of the offense of illegal possession of narcotics. The only significant factual dispute during the trial was whether Pietri told the truth when he testified that he had seen the defendant place the plastic bag under the dashboard. Since the record does not indicate that the informant was present when the police stopped and searched the car he could shed no light on the conflict in the testimony between the defendant and Pietri. There was no plausible reason to reveal the identity of the informant in relation to the evidence presented at trial.

### III

The defendant argues that even if the state was not initially required to disclose the identity of the informant, it had an obligation to do so once the prosecution chose to introduce evidence that the police had initiated an investigation of the defendant concerning narcotics after receiving a complaint about him.

In presenting its case at trial, the state inquired of Detective Jones whether he had received a complaint about the defendant. The officer stated that he had and that as a result of this complaint, he had conducted an investigation in regard to the defendant concerning narcotics. No mention of an informant was made and nothing relating to the substance of the informant's communication to the detective was admitted into evidence.[2]

---

[2] Detective Jones testified as follows:

"Q. And, while you were at headquarters, did you receive a complaint?

"Mr. Avitabile: Objection, your Honor, to the question because of where it's going, based on the arguments just made off the record.

"The Court: He can answer the question yes or no, but he can't repeat what he has heard.

"By Mr. Markle:

"Q. Ask you again, just answer yes or no. Did you receive a complaint concerning Robert Richardson?

The defendant contends that these questions and the answers of the police allowed the jury to infer a knowl-

"A. Yes, I did.

"Mr. Avitabile: May I have an exception, your Honor.

"The Court: Noted.

"By Mr. Markle:

"Q. And, as a result of that complaint, did you conduct an investigation in regards to Mr. Richardson?

"A. Yes, I did.

"Mr. Avitabile: Objection, your Honor, again to the question and the answer, based on the argument.

"The Court: All right. The question was: did he conduct an investigation with respect to Robert Richardson. He can answer it yes or no.

"By Mr. Markle:

"Q. Again, before you answer, I will ask you: what was the purpose or objective of your investigation?

"A. Narcotics.

"Q. And, did you proceed to leave the police headquarters in regards to that complaint and your investigation?

"A. Yes, I did."

Detective Pietri testified as follows:

"Q. While at police headquarters that night, did you receive information concerning a—did you receive a complaint?

"A. Yes, sir.

"Q. And, based on the information that you received, what, if anything, did you and Detective Jones proceed to do?

"Mr. Avitabile: Objection, your Honor, same objection as to Detective Jones's.

"The Court: All right. Noted. Overrule the objection. Note an exception.

"Mr. Avitabile: Thank you, your Honor.

"By Mr. Markle:

"Q. Based on that information, what, if anything, did you and Detective Jones do?

"A. We left the police station.

"Q. And, where did you proceed to go?

"A. We proceeded to go to the North Square area of the City of Waterbury.

"Q. North Square area?

"A. North end area of the City of Waterbury.

"Q. And, who were you looking for at that time?

"A. We were looking for Mr. Henderson.

"Q. Okay. Did you know Mr. Richardson at that time?

"A. Richardson.

"Q. I'm sorry, who?

"A. Richardson. Robert Richardson, I believe."

edgeable possession of narcotics by the defendant, and that, therefore, the identity of the informant ought to be disclosed. We held in *State* v. *Conger,* supra, 393, that indirect references to an informant's tip do not necessarily require disclosure of his identity. A defendant's right to confront his accusers remains unimpaired as long as the substance of the tip is not used in proving the offense. "But we cannot hold that this single miscue [the initial allusion to the tip which occurred during questioning by the state's attorney] required the state, in order to vindicate the defendant's right to confront his accusers, to disclose the informant's identity. Nor can we conclude that this reference deprived the defendant of a fair trial. The state did not directly rely on the substance of the tip to establish an element of the offense. Under these circumstances, the court did not commit error when it declined to order the informant's identity disclosed." Id.

Here the state neither relied on the informant's information to establish an element of the offense nor introduced its substance into evidence. The testimony of the police officers supplied the jury with ample evidence to infer that the defendant knowingly possessed narcotics. The officers testified to the defendant's evasive and erratic operation of the motor vehicle, to the defendant's fidgety upper body movements, and to the defendant's removing the plastic bag from his right pants pocket and placing it behind the console. Any inference that the jury might have drawn from the fact that the police had received a complaint concerning the defendant and narcotics was not significantly prejudicial to the defendant. A mere reference to a "complaint" without any attempt to explore its substance or origin did not require disclosure of the informant's identity.

## IV

The final claim of the defendant is that the trial court erred in failing to allow him to discover whether the informant was one of four people who, on the day of the crime, had previous access to the automobile in which he was arrested for possession of narcotics. He contends that the refusal of the trial judge to require disclosure of the informant's identity denied him his constitutional right to develop a defense.

The defendant maintains that Estraleita Reed, Tyrone (Akeem) Griffin, Kerry Spearman, and Jerry Grant all had access within twenty-four hours before his arrest to the automobile in which he was sitting when the narcotics were found by the police. He contends that he was entitled to know whether one of these persons was the informant, because there is a reasonable possibility that the informant planted the drugs and framed him.

The defendant had the opportunity to subpoena these four people to find out whether one of them was the informant and to determine whether one of them had framed him. Reed and Grant testified for the defendant at the trial. He could have subpoenaed Spearman, who was on probation and had pending drug cases. The defendant claimed during the trial that he had attempted to subpoena Griffin, but was unable to locate him. He failed, however, to ask the judge for a continuance to give him more time to find Griffin, and, therefore, he cannot now complain on appeal about his inability to talk with Griffin.

The defendant contends that his ability to subpoena the four people was not enough. He speculates that, if he had asked each of the four under oath whether he or she was the informant or had framed the defendant, the actual informant might have committed per-

jury. The state's attorney could hardly have remained silent, however, in the event that the actual informant, whose identity was known to the police, had perjured himself on the witness stand. It would have been incumbent upon the state to ensure that a false denial of informant status by any of the four persons named by the defendant did not occur and thus to check with the police for the purpose of discovering any such false testimony. *Merrill* v. *Warden,* 177 Conn. 427, 431, 418 A.2d 74 (1979); see Rules of Professional Conduct § 3.8 (d).

Mere conjecture by the defendant that the informant might have framed him and might, when subpoenaed, have committed perjury is insufficient to meet the defendant's burden of showing that the trial judge abused his discretion in denying disclosure of the informant's identity. "In *State* v. *Harris,* [supra], the defendant sought to compel the state to disclose the identity of an informer who had advised the police that there were narcotics at the defendant's home. As in the case at bar, only surmise and conjecture were suggested by the defendant as to how the informer could supply information which would be beneficial to the defendant's case. There is nothing in the record before us to show that the informant participated in or had knowledge of the crime charged. In *State* v. *Harris,* supra, we held (p. 530) that under the circumstances there was no abuse of discretion either in the court's refusal to compel the disclosure of the informant's identity or in excluding testimony as to that identity. Similarly, we conclude in this case that the trial court did not abuse its discretion in ruling as it did in this regard." *State* v. *Johnson,* supra, 229.

There is no error.

In this opinion the other justices concurred.