## STATE OF CONNECTICUT *v.* JAMES BAKER
(AC 17227)

Lavery, Spear and Sullivan, Js.

Argued April 28—officially released September 8, 1998

*Alexander H. Schwartz*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Michael Pepper*, former assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant, James Baker, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes §§ 53a-54a (a)[1] and 53a-8[2] and conspiracy to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-48 (a).[3] On appeal, the defendant claims that the trial court improperly denied his motion to disclose the state's informant and refused to allow the defendant to produce evidence that a third party committed the crime with which the defendant was charged. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On March 21, 1994, the victim, Amenophis Morris, was shot and killed while standing on the porch of his home on Exchange Street in New Haven. Earlier that day, the defendant had had a confrontation with Jeffrey Dolphin, with whom the defendant sold drugs. The

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 53a-8 provides in relevant part: "Criminal liability for acts of another. (a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. . . ."

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

defendant believed Dolphin was responsible for a third party's loss of certain drugs. After the confrontation, Jermaine Harris, Trent Butler and Terrence Stevenson arrived, and the defendant told them that Dolphin was responsible for losing the drugs. Stevenson and Dolphin went to look for the drugs but were unsuccessful. Thereafter, Dolphin and Stevenson reunited with Harris, Butler and the defendant. Harris pulled a gun on Dolphin and stated, "Why don't we make this asshole do it?" Stevenson asked Dolphin if he had ever killed anyone, to which Dolphin replied that he had not. Stevenson told Dolphin that there was someone he wanted Dolphin to kill. Then, Stevenson forced Dolphin into the defendant's car, and all five men drove off. Dolphin heard the name "Amenophis" and heard a reference to money that was owed.

The defendant drove to Exchange Street and parked the car. Harris and Stevenson got out of the car and walked up to the victim, who was standing on his porch. Harris was carrying a gun and was wearing a black army fatigue jacket and a mask. The defendant and Butler got out of the car and stood in front of it. Dolphin heard five to eight shots and observed the victim fall. Thereafter, the men jumped into the car, and Harris said, "I got that bastard." Eventually, the men let Dolphin out of the car. Before doing so, however, Butler told Dolphin, "I know where your mother and sister live," and, "They've been finding bodies in Bridgeport."

The victim's neighbor, Luis Deleon, observed the shooting from his porch across the street. He saw a person wearing a black mask and an army jacket walk toward the victim's residence, pull out a gun and fire six shots. He saw the victim fall to the ground, and he saw the assailant flee.

## I

The defendant claims that the trial court violated his constitutional right to present a defense under the sixth

amendment to the United States constitution and violated his right to a fair trial under the fifth amendment to the United States constitution by precluding him from inquiring into the identity of a police informant. The defendant argues that the state is required to disclose the identity of an informant when that information is critical to the defendant's right to a fair trial. The defendant argues that disclosure of the informant's identity was necessary to determine the source of exculpatory information. He contends that the trial court's refusal to permit this inquiry adversely impacted his sixth amendment right to present a defense, namely, that a third party was responsible for the murder. The defendant also argues that the state did not adequately assert its claim of privilege and that consequently, the trial court did not properly weigh the applicable competing interests in its ruling.

The facts relevant to this claim are as follows. During its case-in-chief, the state called as a witness Detective Hilden Wright of the New Haven police department. During cross-examination, the defendant asked Wright if he had received information that someone by the name of "Ra-Ra" Diaz was responsible for killing the victim. The state objected to that question, and a hearing was held outside of the presence of the jury. The defendant stated that Wright's police report indicated that Wright had received information from an anonymous informant that two individuals known as Ra-Ra Diaz and Jose "Little" Melendez had killed the victim because the victim failed to carry out a murder ordered by the Latin Kings gang. The court sustained the state's objection on the ground that the question was outside the scope of direct examination. The court informed the defendant that he could call Wright in his case-in-chief if he wanted to pursue this line of inquiry. Rather than subpoena Wright at a later time, however, the defendant requested the court's permission to present an offer of

proof. The defendant asked Wright for the name of the person who had told him that Ra-Ra was responsible for the victim's death. The state objected on the ground that the defendant was requesting information regarding the informant's identity. The court sustained the objection. Upon further questioning by the defendant, Wright testified that the informant stated that someone had told him that Ra-Ra killed the victim, but the informant did not tell Wright who had told him. Furthermore, Wright stated that the person who told the informant that Ra-Ra was responsible for the murder had heard it from someone else, whom the informant did not identify. On the basis of that voir dire, the trial court refused to allow the defendant to present evidence that a third party killed the victim.

" 'What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. . . . The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.' " *State* v. *Richardson*, 204 Conn. 654, 657–58, 529 A.2d 1236 (1987), quoting *Roviaro* v. *United States*, 353 U.S. 53, 59, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957).

"*Roviaro* established a test for assessing challenges to the applicability of the informant's privilege. This test involves the balancing of two competing interests: (1) the preservation of the 'underlying purpose' of the privilege; and (2) the 'fundamental requirements of fairness.' " *State* v. *Jackson*, 239 Conn. 629, 632, 687 A.2d 485 (1997), quoting *Roviaro* v. *United States*, supra, 353 U.S. 60. "The fundamental requirements of fairness

comprise the defendant's right to a fair trial, including the right to obtain information relevant and helpful to a defense." *State* v. *Jackson*, supra, 632–33.

"While an informant's or government's privilege exists, it must yield where it would interfere with a defendant's right to a fair trial. 'Where the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.' " *State* v. *Richardson*, supra, 204 Conn. 658, quoting *Roviaro* v. *United States*, supra, 353 U.S. 60–61.

"The trial court's determination to apply the privilege is reviewed for abuse of discretion. . . . [W]e will disturb the trial court's findings only when those findings are clearly erroneous as where there is no evidence in the record to support such findings." (Citations omitted.) *State* v. *Jackson*, supra, 239 Conn. 634–35.

"Before a court will compel disclosure, the informant typically must be a participant in the alleged crime or an eyewitness thereto." *State* v. *Lee*, 30 Conn. App. 470, 479, 620 A.2d 1303 (1993), aff'd, 229 Conn. 60, 640 A.2d 553 (1994); see also *State* v. *Jackson*, supra, 239 Conn. 636–37 (disclosure of informant's identity essential to defense "where 'the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence' "); *State* v. *West*, 178 Conn. 444, 445, 423 A.2d 117 (1979) (no requirement that identity of informer, who was not actual participant in or witness to drug sale, be disclosed); *State* v. *McDaniel*, 176 Conn. 131, 134, 405 A.2d 68 (1978) (in absence of information that informant was actual participant in or witness to offense charged, trial court did not improperly deny request for identity).

In *State* v. *McDaniel*, supra, 176 Conn. 131, our Supreme Court did not compel disclosure of an informant's identity where the information supplied by the

informant to the police was based on hearsay. In that case, "the informer's knowledge was limited to what he had heard was about to occur and . . . it was that hearsay information which he passed on to the authorities." Id., 133. The *McDaniel* court rejected the defendant's claim that he had an absolute right to disclosure of the identity of an informant because the informant's testimony may have been relevant to the defense. Id., 134; see also *State* v. *Richardson*, supra, 204 Conn. 663 ("[m]ere speculation that the informant's information will be helpful to the defense is not sufficient to mandate disclosure"); *State* v. *West*, supra, 178 Conn. 446 (same).

In the present case, it is undisputed that the informant was not a participant in or a witness to the crime. Wright stated that the information he received from the informant was based on hearsay.[4] Thus, the defendant's assertion that the informant provided direct evidence of the identity of the shooters that would have been

---

[4] The defendant asked the following questions and elicited the following responses during his voir dire of Wright:

"Q. Well, let me ask you this, detective. How is it that this anonymous source came by way of the information that he related to you?

"A. Somebody told him.

"Q. All right. Somebody told him?

"A. Yes.

"Q. All right. Was the somebody—do you know who it was who told him?

"A. No.

"Q. You don't. Do you know whether it was Ra-Ra Diaz that told him that?

"A. No. It wasn't Ra-Ra Diaz.

"Q. Do you know whether or not it was Jose Melendez that told him that?

"A. No. It wasn't Jose Melendez.

"Q. How do you know that?

"A. Because he said it wasn't those two guys. Somebody else told him that these guys did it.

"Q. All right. When he said somebody else told him, did he indicate who it was that told him?

"A. No.

"Q. Did he indicate how it was that this person came upon this knowledge?

"A. This person heard.

"Q. And heard from whom?

"A. He didn't say."

material to the outcome of the trial is meritless. The informant's information was based on hearsay, which is insufficient to support a conclusion that disclosure of the informant's identity was essential to the defense.

We find no merit in the defendant's contention that the trial court did not have before it sufficient facts to render its decision. The defendant's voir dire of Wright established that the informant's information was based on hearsay. The defendant's contention that the testimony of a state's witness, Alton Williams, that the victim was involved in a dispute with the Latin Kings gang and that Puerto Rican men in a red car were repeatedly driving around the victim's neighborhood on the day of the shooting was sufficient to demonstrate his need for disclosure of the identity of the informer does not change the nature of the information the informant provided to Wright.

We conclude that the trial court did not abuse its discretion in denying the defendant's request for disclosure of the identity of the informant, and that the defendant's rights to a fair trial and to present a defense were not violated thereby.[5]

## II

The defendant next claims that the trial court improperly refused to allow him to produce evidence that a

---

[5] The defendant asserts that the record does not reveal that the trial court performed the required balancing test under *Roviaro* v. *United States*, supra, 353 U.S. 53. Although the record in this case does not reveal the basis of the trial court's decision, "[w]e do not presume error; the trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden demonstrating the contrary." *State* v. *Crumpton*, 202 Conn, 224, 231, 520 A.2d 226 (1987). The defendant has failed to meet this burden. The defendant could have requested an articulation of the trial court's decision if he believed that the trial court did not properly balance the parties' competing interests in sustaining the state's objection to the defendant's inquiry regarding the identity of the informant. "[A] claim of error cannot be predicated on an assumption that the trial court acted erroneously." (Internal quotation marks omitted.) Id., 232.

third party was responsible for the victim's death. This argument is linked to the defendant's first claim because the defendant contends that he was precluded from discovering evidence of third party culpability because he did not have access to the identity of the informant.[6]

As previously noted, the defendant made an offer of proof in which he questioned Wright about whether he had information that the individuals known as Ra-Ra and Little were responsible for killing the victim. In refusing to allow the defendant to question Wright on this point, the court told the defense counsel that "you seem to have already put the cart before the horse and elevated what the officer was told by this person as evidence of third party guilt. All I've heard so far is third or fourth hand hearsay from unidentified sources that simply does not establish the kind of third party guilt evidence that is properly admissible in the case."

The defendant also sought to question Williams on the issue of third party culpability. Williams testified on direct examination by the state that he was standing on the porch with the victim prior to the shooting. As

---

[6] The defendant also argues that state suppressed exculpatory information in violation of *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and thereby prevented him from fully exercising his right to present a defense under the fifth amendment. "In order to prove a *Brady* violation, the defendant must show: (1) that the prosecution suppressed evidence after a request by the defense; (2) that the evidence was favorable to the defense; and (3) that the evidence was material." (Internal quotation marks omitted.) *State* v. *Rasmussen*, 225 Conn. 55, 90, 621 A.2d 728 (1993).

Prior to trial, the defendant filed a motion for discovery, requesting that the state provide him with exculpatory information. In response, the state provided the defendant with Wright's police report, which included the information from the informant that Ra-Ra and Little shot the victim. In his brief, the defendant admits that the state did not suppress this exculpatory information. The defendant contends that the state improperly suppressed the identity of the informant, which deprived the defendant of the means by which to investigate the exculpatory information. For those reasons, the defendant was not entitled to disclosure of the identity of the informant. Accordingly, the defendant's claim of a *Brady* violation is without merit.

Williams stepped from the porch, he heard gunshots and saw the victim fall. During cross-examination, the defendant asked Williams whether he was aware of the victim's "having some problems with anybody else." The state objected, and a hearing was held outside of the presence of the jury. The defendant stated that he wanted to present evidence through Williams that a third party committed the murder. In an offer of proof, Williams testified that at the time of the shooting, the victim told him that he had a "beef" with a member of the Latin Kings gang. Williams also testified that on the day of the shooting, he observed several Puerto Rican men driving around the victim's neighborhood in a red car. After the shooting, he saw the red car parked near the victim's residence with its ignition on and later saw the police tow the car away. The court refused to allow the defendant to present this evidence. The court stated: "At this point, to the extent that [the defendant] has renewed his offer of proof with respect to third party guilt, clearly . . . there is nothing more than a . . . miasma of speculation that in no way amounts to the kind of direct connection that the case law suggests is required before third party evidence can be introduced in front of the jury. So, to the extent you have renewed your request to pursue that line of inquiry with Mr. Williams, based on what you have offered me today, it is denied."

"It is well established that a defendant has a right to introduce evidence that another person committed the offense with which the defendant is charged." *State* v. *Sauris*, 227 Conn. 389, 401, 631 A.2d 238 (1993). The defendant must, however, present evidence that directly connects the third party to the crime. Id. " 'It is not enough . . . to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused.' "

Id., quoting *State* v. *Hernandez*, 224 Conn. 196, 202, 618 A.2d 494 (1992).

"The admissibility of evidence of third party culpability is governed by the rules relating to relevancy." *State* v. *Boles*, 223 Conn. 535, 549, 613 A.2d 770 (1992). Relevancy is an evidentiary question, and "[e]videntiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Payne*, 219 Conn. 93, 114, 591 A.2d 1246 (1991). "In determining relevancy, [t]he court must determine whether the proffered evidence is corroborative or coincidental, whether it is probative or tends to obfuscate, and whether it clarifies or obscures. In arriving at its conclusion, the trial court is in the best position to view the evidence in the context of the entire case, and we will not intervene unless there is a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *Joyce*, 30 Conn. App. 164, 178, 619 A.2d 872 (1993), rev'd on other grounds, 229 Conn. 10, 639 A.2d 1007 (1994).

We conclude that the trial court properly exercised its discretion in determining that the proffered evidence was insufficient to connect a third party to the crime. The evidence presented in the defendant's offer of proof indicated only that the victim and a member of the Latin Kings gang had a disagreement and that persons who might have been members of that gang were in the victim's neighborhood on the day of the shooting. While the proffered evidence might provide a basis to suspect that a member of the gang was responsible for the shooting, that evidence is too tenuous to be considered relevant. The defendant's claim that the proffered evidence "directly points" to a "specific third party as a culprit" is without merit. Evidence regarding the Latin Kings gang and the red car was inadmissible because there was no evidence that directly connected a mem-

ber of that gang or an occupant of that vehicle to the crime with which the defendant was charged. "Unless that direct connection exists it is within the sound discretion of the trial court to refuse to admit such evidence when it simply affords a possible ground of possible suspicion against another person." (Internal quotation marks omitted.) *State* v. *Boles*, supra, 223 Conn. 549–50.

The defendant's claim that Wright had relevant information connecting a third party to the crime is equally unavailing. As noted previously, the defendant sought to introduce evidence that two individuals known as Ra-Ra and Little killed the victim. The defendant could not establish a direct connection between those individuals and the crime because the information the informant gave to Wright was based on hearsay.

In *State* v. *Alvarez*, 216 Conn. 301, 579 A.2d 515 (1990), the defendant attempted to introduce evidence that a third party was responsible for shooting the victim. The defendant argued that the trial court should have allowed a police officer to testify to a statement made to him by an eyewitness to the shooting incident. In an offer of proof made out of the presence of the jury, the officer testified that the eyewitness told him that he thought he saw a person named Rasheem shoot the victim. Our Supreme Court explained that while this evidence directly connected Rasheem with the crime and, thus, was relevant, it would be admissible only if the evidence "was not excluded by some other rule or principle of law." Id., 305. The court noted, however, that the police officer's statement was hearsay that did not fall within any recognized exception to the hearsay rule. Thus, the court held that the trial court did not abuse its discretion in refusing to admit the statement. As in *Alvarez*, the evidence offered by the defendant

in this case, namely that Ra-Ra and Little killed the victim, was based on hearsay and was properly excluded.

The judgment is affirmed.

In this opinion the other judges concurred.