STATE OF CONNECTICUT *v.* WILFREDO MAISONET
(5465)

BIELUCH, STOUGHTON and NORCOTT, Js.

Argued April 19—decision released September 6, 1988

*John R. Williams,* for the appellant (defendant).

*Leah Hawley,* deputy assistant state's attorney, for the appellee (state).

BIELUCH, J. The defendant appeals from the judgment of conviction, after a jury trial, of selling a narcotic substance in violation of General Statutes §§ 53a-8 and 21a-277 (a), and of conspiracy to sell a narcotic substance in violation of General Statutes §§ 53a-48 (a) and 21a-277 (a). The defendant claims that the trial court erred (1) in limiting his cross-examination of a prosecution witness, an accomplice, on the questions of whether the witness had been offered a particular sentence in exchange for his testimony and of the witness' expectation regarding the extent of a reduced sentence, (2) in limiting his cross-examination of an undercover police officer concerning a previous misidentification

the officer had made of a suspect in an unrelated proceeding, and (3) in denying his attempt to show that his prior record consisted solely of a misdemeanor conviction. We find no error.

The jury could reasonably have found the following facts. On February 1, 1985, Trooper Julio Fernandez, on undercover assignment from the Connecticut state police statewide narcotics task force, entered the Crown Street Market in Meriden, owned by the defendant, and purchased one half gram of cocaine from Luiz Colon and the defendant. Both the defendant and his accomplice, Colon, were arrested and charged with crimes connected to the sale of the cocaine.[1]

At trial, Colon testified for the state regarding the drug transaction and also identified the defendant. During his cross-examination, it was established that Colon was awaiting sentencing on a number of charges and was facing a maximum of thirty-five years in prison. The court thereafter sustained the prosecution's objections to the question whether "there ever [was] a time when you were offered any particular specific sentence," and to the question asking the witness what he thought the "best" for him would be regarding a reduced sentence.

Fernandez testified as to the drug purchase and explained how he had identified the defendant, after the sale, from an array of photographs presented to him by the police. On cross-examination, the defendant attempted to ask Fernandez about a misidentification he alleged Fernandez had made in a previous case involving the use of photographs to identify the suspect. The court also prohibited this witness, upon

[1] Colon pleaded guilty to selling narcotics in connection with the transaction involved in this case, as well as to a charge involving another narcotics transaction, and to a violation of probation. At the time of this trial, Colon had not yet been sentenced on these charges.

the state's objection, from answering whether he was aware that, in a previous unrelated case, he had claimed to have purchased narcotics from an individual who was actually serving time in prison at the time of that alleged sale.

At another point in the trial, the state introduced a display of eight photographs as an exhibit and asked Fernandez to indicate whether he recognized them. He acknowledged that the photographs were the ones he had examined for the police after the narcotics purchase, and identified the defendant's photograph as the one he had previously selected as being the individual from whom he had purchased the cocaine. On direct examination of the defendant later in the trial, the defendant was asked the nature of his prior conviction. The state objected on the ground of immateriality. The court sustained the objection, to which the defendant excepted, after claiming that the jury should know that he had been convicted only of a misdemeanor because "the jurors, whether they are told to or not, often speculate about the origin of that photograph."

I

The defendant first claims that the trial court erred when it would not allow Colon to testify as to whether the state had promised him a "particular specific sentence" for his testimony against the defendant, or as to the reduction in sentence he expected to receive.[2]

---

[2] The transcript indicates the following exchange occurred:

"Q. So you have a total possible pending sentence against you right now of 35 years?

"A. Yes, sir.

"Q. Now, you made a deal with them or no deal, is that what you are saying?

"A. No deals.

"Q. You are just sitting there hoping somebody will cut you a break?

"A. Yes, sir.

"Q. Was there ever a time when you were offered any particular specific sentence?

The defendant argues that such testimony should have been allowed because it would "demonstrate the bias of the witness by showing that he expected an extremely favorable sentence in exchange for his testimony" against the defendant. By limiting the witness' testimony, the defendant argues that "the prosecution was permitted to leave with the jury the false impression that its star witness had no more expectation of a payoff for his damning testimony than a mere vague hope for 'consideration,' " and that the defendant's right to confront witnesses against him had thereby been abridged.[3] We do not agree.

"The right of an accused effectively to cross-examine an adverse witness is embodied in the confrontation

"A. No, sir.

"Mr. Hadden: I will object to that.

"The Court: Sustained.

"Mr. Van Kirk: Well, the grounds for the objection weren't stated.

"Mr. Hadden: Clearly not relevant, your Honor, to anything he has testified to as to what he has pled guilty to and what the arrangement is with the court and anything that was discussed prior to that time is totally irrelevant.

"Mr. Van Kirk: Well, perhaps maybe I could do it in a little different way that would make it seem more relevant. I will rephrase the question.

"Q. What do you expect from this?

"A. The best for me.

"Q. The best for you. What do you think the best for you is?

"Mr. Hadden: I object. What he perceives the best he can get, I don't know whether that has any relevance to this man's testimony.

"The Court: Well, I will sustain the objection.

"Mr. Van Kirk: May I have an exception, your Honor?

"The Court: It may be noted.

"Q. But you expected this testimony here to help you out?

"A. Yes, sir.

"Q. You expect consideration?

"A. Yes, sir."

[3] Although the defendant has cited, as the bases for his claim, both the sixth amendment to the constitution of the United States and article first, § 8, of the constitution of Connecticut, he offers no separate analysis of the Connecticut constitution as a basis for disparate treatment between them. We see no reason to undertake such an analysis. See *State* v. *Braxton,* 196 Conn. 685, 688 n.2, 495 A.2d 273 (1985); *State* v. *Cosby,* 6 Conn. App. 164, 166 n.1, 504 A.2d 1071 (1986).

clause of the sixth amendment. *State* v. *Gaynor,* 182 Conn. 501, 508, 438 A.2d 749 (1980); see also *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Douglas* v. *Alabama,* 380 U.S. 415, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965). Cross-examination regarding motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. *State* v. *Milum,* 197 Conn. 602, 609, 500 A.2d 559 (1985); *State* v. *Privitera,* 1 Conn. App. 709, 711–12, 476 A.2d 605 (1984)." *State* v. *Cox,* 7 Conn. App. 377, 383–84, 509 A.2d 36 (1986). " ' "The general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial judge . . . but this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment." ' (Citations omitted.) *State* v. *Castro,* 196 Conn. 421, 424, 493 A.2d 223 (1985); *State* v. *Gaynor,* [supra]." *State* v. *Jones,* 205 Conn. 638, 670, 534 A.2d 1199 (1987). Our courts, therefore, undertake a bipartite analysis when reviewing claims of undue restriction on the scope of cross-examination, ascertaining first whether the constitutional standard has been met, and if so, then whether the trial court abused its discretion by restricting the scope of the cross-examination thereafter. *State* v. *Milum,* supra; *State* v. *Gaynor,* supra, 508; *State* v. *Cox,* supra, 384; *State* v. *Heinz,* 3 Conn. App. 80, 85–86, 485 A.2d 1321 (1984).

From such an analysis of the record before us, we conclude that the defendant has not been denied his right to confront the witnesses against him. First, the constitutional standard has been met. "The confrontation clause of the sixth amendment requires that the defendant be accorded some irreducible minimum of cross-examination into matters affecting the reliability and credibility of the state's witnesses." *State* v. *Ortiz,* 198 Conn. 220, 224, 502 A.2d 400 (1985). "The defendant's right to confrontation is preserved, if,

through cross-examination, defense counsel is 'permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.' " *State* v. *Jones,* supra, 669, quoting *Davis* v. *Alaska,* supra, 318; see *State* v. *Weidenhof,* 205 Conn. 262, 270, 533 A.2d 545 (1987). The defendant here had a sufficient opportunity to cross-examine the witness and thereby attempt to convey to the jury the basis for any bias or prejudice the witness may have had while testifying on behalf of the state.[4]

Second, the trial court did not abuse its discretion when it limited the cross-examination of Colon concerning his expectation of a reduced sentence, and whether he had been promised a certain sentence by the state. The defendant argues that, since Colon's testimony was "devastating" to him, the jury was entitled to hear all evidence which might have suggested bias or prejudice on the part of the witness. We find this claim unavailing.

The defendant has cited *Hoover* v. *Maryland,* 714 F.2d 301 (4th Cir. 1983), to support his argument that Colon should have been allowed to testify as to what

---

[4] The defendant's cross-examination of the witness evoked details concerning the witness' prior record and included numerous questions regarding the particular sale of cocaine before the jury. Additionally, the jury had been informed that the witness had pleaded guilty to a charge involving the narcotics transaction for which the defendant was being tried, as well as to a charge for another sale of narcotics, and to violation of probation, and that he expected the state to treat him favorably, when he was later sentenced, for his testimony. From this evidence, the jury could infer that at least one of the witness' motives for testifying against the defendant was to receive a reduced sentence. It was the function of the jury to weigh the witness' credibility and the reliability of his testimony once it was established that he expected some consideration for his testimony on behalf of the prosecution. See *State* v. *Hart,* 198 Conn. 424, 427, 503 A.2d 588 (1986). The witness actually testified that the state had not offered him "any particular specific sentence," and that he had not made any deal with the state for his testimony.

he believed he was entitled to receive in the way of a reduced sentence. While it is true that cases in which the defendant is denied sufficient opportunity to impeach a "key" government witness deserve a more rigorous review than cases not involving such witnesses; *State* v. *Gaynor,* supra, 509 n.7; a fair reading of that case leads us to agree with the dissenting opinion of Circuit Judge Hall, who concluded that the majority's reliance on *Davis* v. *Alaska,* supra, was misplaced, that the jury had "abundant evidence of [the witness'] possible bias and motive" for testifying against the defendant, and that "the only question in [that] case [was] whether the trial court cut off cross-examination too quickly, a matter in which the judge has wide discretion." *Hoover* v. *Maryland,* supra, 308 (Hall, J., dissenting).

In order to establish an abuse of discretion, the defendant must show that the restrictions imposed upon the cross-examination were clearly prejudicial. *State* v. *Castro,* supra, 426. "Once it is established that the trial court's ruling on the scope of cross-examination is not constitutionally defective, this court will apply '[e]very reasonable presumption . . . in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion.' *State* v. *Briggs,* 179 Conn. 328, 333, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980)." *State* v. *Castro,* supra. Where it is clear, as in this case, that the jury had been presented with testimony indicating that the defendant had a strong expectation that the state would offer him a reduced sentence in exchange for his testimony, this court will not hold that the trial judge abused his discretion by disallowing questions asking how much of a reduction the witness expected for testifying. The jurors were left with adequate information from which they could assess the reliability of the witness' testi-

mony. The additional questions going to the extent of sentence reduction would have served merely as cumulative evidence on that point.[5]

## II

The defendant next claims that the trial court erred when it denied cross-examination of Fernandez concerning his allegedly mistaken identification, through a photographic display, of another person in a drug sale entirely unrelated to this case. We find that this claim is not reviewable because the defendant failed to preserve it as grounds for appeal by taking an exception to the judge's evidentiary ruling. Practice Book § 288. In fact, the defendant agreed with the ruling. See *Crowder* v. *Zion Baptist Church, Inc.*, 143 Conn. 90, 97–98, 119 A.2d 736 (1956). In addition, the defendant does not seek review under *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973); see *State* v. *Lizotte*, 200 Conn. 734, 742A, 517 A.2d 610 (1986); *State* v. *Miller*, 186 Conn. 654, 672, 443 A.2d 906 (1982). Nor does he claim that the ruling constituted plain error. Practice Book § 4185. We, therefore, decline to address the merits of this claim.

## III

The final issue raised in this appeal concerns the admissibility, on direct examination of the defendant, of his prior criminal record. The defendant argues that he should have been allowed to testify that his record consisted only of a misdemeanor conviction in order

[5] We note that this case is significantly unlike *State* v. *Ortiz,* 198 Conn. 220, 502 A.2d 400 (1985), where the defendant was entirely prohibited from cross-examining a key prosecution witness concerning pending criminal charges against him. In that case it was held that the defendant's constitutional right of confrontation was abridged even though the Supreme Court was "convinced that the state's evidence, even without the testimony of [the key witness], would have been sufficient to sustain a finding of guilt beyond a reasonable doubt . . . ." Id., 225.

to rebut the "bad man" evidence against him, and the prosecution's use of his police "mug shots" for identification. We disagree.[6]

At trial, the defendant claimed the testimony of his misdemeanor conviction was admissible because the "mug shots" placed in evidence by the prosecution earlier in the case, depicting front and side views of the defendant with similar photographs of seven other male persons in an array, might cause the jury to speculate about the origin of the photographs, and that it was "asking too much of the jury not to draw . . . conclusions that in fact he does have some kind of clandestine past he is hiding." The court sustained the state's objection that the testimony was immaterial, since the defendant's record did not "bear on whether or not he is guilty of the offense charged." Showing the jury that the defendant "only" had a prior misdemeanor conviction, which the defendant attempted to do, is not "good character" evidence which a defendant has the right to introduce when he takes the stand. See C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 8.3.4, p. 238. Such evidence "must pertain to the character trait involved in the crime charged, not general good character." Id.; *State* v. *Martin,* 170 Conn. 161, 163, 365 A.2d 104 (1976).

Although mug shots for identification of the defendant may not be used indiscriminately; see *State* v. *Marshall,* 3 Conn. App. 126, 131–32, 485 A.2d 930 (1985);[7] a careful reading of the transcript in this case

---

[6] In his brief, the defendant has referenced several instances where, he alleges, the prosecution presented testimonial evidence that he now claims was "to the general effect that the defendant was of poor character, was dangerous, had criminal propensities, and was known to the police as a criminal." Since such testimony was not objected to; Practice Book § 288; we will not review this claim.

[7] This state has long allowed the use of mug shots to prove the identity of the defendant during trial if it is relevant and material and if its proba-

convinces us that the prosecution minimized any suggestiveness of the photographs when they were offered in evidence. During a motion to suppress the mug shots before trial began, the prosecutor alerted the defense counsel that he intended to offer the photographs in evidence and described, in detail, those procedures he would use to mask any prejudicial information contained on the photographs, which he subsequently followed. The defendant did not object to these procedures during trial. The trial judge cautioned the jurors not to remove the coverings from the face of the photographs when they were offered as full exhibits. The mug shots were offered to show the jury the procedure Fernandez used to identify the defendant as the person from whom he purchased the cocaine; they had a clear probative value and it cannot be claimed the trial court abused its discretion by allowing the photographs into evidence.

The defendant's concern, however, is not with the admissibility of the mug shots, but with any possible spillover effect that might have prejudiced the jury if they became aware that the photographs were mug shots taken by police when the defendant was arrested for his past crime. The defendant incorrectly attempts to characterize such possible spillover effect as bad character evidence that the state introduced against him. "The State may not, in its case-in-chief, offer evidence of the accused's character as to a certain trait to prove that he acted in accordance therewith, viz., that he had a propensity to so act and that he therefore committed the crime charged." C. Tait & J. LaPlante, Connecticut Evidence § 8.3.1, p. 232. The photo array including the defendant's pictures was introduced

tive value outweighs its prejudicial tendency. *State* v. *Peary,* 176 Conn. 170, 175, 405 A.2d 626 (1978), cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979); *State* v. *Crowe,* 174 Conn. 129, 131, 384 A.2d 340 (1977).

solely for the purpose of establishing the identity of the defendant as the seller of the cocaine. Furthermore, the precautions taken at trial here minimized any prejudice which might have arisen out of the introduction into evidence of the photographs and establishes that the state did not intend to indicate to the jury that the defendant had a criminal character which tended to implicate him in this offense.

There is no error.

In this opinion the other judges concurred.