## STATE OF CONNECTICUT *v.* KICKY KISER
### (15042)

Dupont, C. J., and Heiman and Shea, Js.

Argued April 30—officially released October 1, 1996

*Jeremiah Donovan*, special public defender, with whom, on the brief, were *Terry Donovan*, special public defender, and *Alix Biel*, law student intern, for the appellant (defendant).

*Peter A. McShane*, assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-278 (b),[1] possession of a controlled substance with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b),[2] and possession of drug paraphernalia in viola-

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years . . . ."

[2] General Statutes § 21a-278a (b) provides: "Any person who violates section 21a-277 or 21a-278 by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school, a public housing project or a licensed child day care center, as defined in section 19a-77, that is identified as a child day care center by a sign posted in a conspicuous place shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school, a public housing project or a licensed child day care center, as defined in section 19a-77, that is identified as a child day care center by a sign posted in a conspicuous place. For the purposes of this subsection, 'public housing project' means dwelling accommodations operated as a state or federally subsidized multifamily housing project by a housing authority, nonprofit corporation or municipal developer, as defined in section 8-39, pursuant to chapter 128 or by the Connecticut Housing Authority pursuant to chapter 129."

tion of General Statutes § 21a-267 (a).[3] The jury acquitted the defendant of a fourth charge of possession of marijuana. On appeal, the defendant claims that the trial court improperly (1) refused to order the state to disclose the identity of certain confidential police informants and declined to conduct an in camera examination of those informants, (2) refused to deliver a cautionary instruction concerning a comment made by the state's attorney relating to the defendant's post-arrest silence, a comment that the defendant claims violated her due process right to a fair trial, (3) refused to instruct the jury concerning the statutory definitions of "narcotic substance" and "controlled substance," thereby depriving the defendant of her constitutional right to have the jury determine whether the state had satisfied its burden of proof with respect to each element of the offenses charged, (4) prohibited the defendant from testifying that, prior to her arrest in this case, she had never been arrested for or convicted of a crime, and (5) excluded evidence that another individual had entered a guilty plea and was awaiting sentencing for possession with intent to sell the same cocaine that was the subject of the defendant's case. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On September 27, 1994, the defendant was sharing an apartment at 37-A Lake Street in Norwich with Lisa Wosston and Wosston's two children. The defendant and Wosston had been sharing the apartment for approximately two months and were its only adult occu-

---

[3] General Statutes § 21a-267 (a) provides as follows: "No person shall use or possess with intent to use drug paraphernalia, as defined in subdivision (20) of section 21a-240, to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain or conceal, or to inject, ingest, inhale or otherwise introduce into the human body, any controlled substance as defined in subdivision (9) of section 21a-240. Any person who violates any provision of this subsection shall be guilty of a class C misdemeanor."

pants. During the time that Wosston and the defendant shared the apartment, people were constantly entering and shortly thereafter leaving the apartment. The Norwich police department conducted a surveillance of the apartment over a two or three day period prior to September 27, 1994, and observed the constant flow of people at the apartment.

On September 27, 1994, the defendant and Nathaniel Charles arrived at the apartment together and went directly into the defendant's bedroom. At approximately 7:19 p.m., members of the statewide narcotics task force, with members of the Norwich police department, executed a search and seizure warrant at 37-A Lake Street. The warrant authorized the search of the premises as well as a search of the persons of the defendant and Wosston.

The police entered the apartment through an unlocked door that led into the kitchen. A closed door that led into a bedroom was forced open by Officer Mark Rankowitz of the Norwich police department. Rankowitz entered the bedroom followed by Officers John A. John and Christopher Ferace.

The defendant and Charles were lying on a mattress on the floor of the bedroom. Charles was holding a razor blade in his hand and was cutting a substance on a cutting board that was resting on a small strongbox on the floor. The defendant was holding a plastic bag containing a substance, and she dropped the bag as the police entered the bedroom. The defendant and Charles were handcuffed and placed under arrest.

The police confiscated the cutting board and a white rock-like substance that was on the board. The police also seized fifteen clear plastic bags containing a beige rock-like substance. The strongbox contained a clear plastic bag containing a number of rock-like pieces individually packaged in plastic wrap.

The rock-like material confiscated at 37-A Lake Street was cocaine in freebase form, otherwise known as crack cocaine, and weighed 37.75 grams, representing approximately 180 individual dosage units. Cocaine in freebase form is not water soluble and when heated becomes a vapor smoke that is inhaled into the lungs.

The police also confiscated empty plastic bags and packaging materials that were next to the strongbox, a loaded .40 caliber Glock semiautomatic handgun from the strongbox, and a beeper. No materials indicating the use of cocaine such as pipes or other implements were found on the premises.

The quantity of drugs was consistent with an amount held for sale and inconsistent with an amount held for personal use. The presence of the beeper indicated that the drugs were being sold from the premises because drug dealers make use of beepers as a method of communication. The individually wrapped packages of cocaine and the presence of packaging material were also consistent with the preparation of drugs for sale. The lack of smoking devices on the premises indicated that the drugs were not for personal use. The manner in which the chips of crack cocaine were removed from the bulk product with a razor blade and packaged in the ends of clear plastic bags was consistent with practices of a freebase cocaine dealer.

The defendant's apartment at 37-A Lake Street in Norwich is 1370 feet from the property line of St. Joseph's School. The distance from the most remote corner of the apartment building to the property line of the school is 1410 feet.

At trial, the defendant testified in her own behalf. She asserted that Wosston had invited her to be her roommate and that she moved into 37-A Lake Street toward the end of July, 1994. The defendant claimed that she met Charles in June, 1994, and that he became

her boyfriend in August, 1994. She claimed that sometime between September 7 and September 10, 1994, Charles brought drugs into the apartment at 37-A Lake Street. The defendant asserted that she ordered Charles to remove his drugs from the apartment and that Charles became angry and left the apartment. The defendant claimed that Charles brought drugs into the apartment on a second occasion and that, when she told him to remove the drugs, he again became angry.

The defendant testified that on September 17, 1994, Charles came to the apartment with a small safe and asked if he could leave the safe, which contained "work," in the apartment. The defendant testified that the term "work" means narcotics. The defendant claimed that when she told Charles that he could not store the material with her, Charles became enraged, slapped her face and left with the safe.

The defendant asserted that she did not speak with Charles between the day that he struck her and the day that they were arrested in the defendant's bedroom. She claimed that on September 25, 1994, she observed Charles at the corner of Lake and Boswell Streets, but did not speak with him.

The defendant testified that on September 27, 1994, Charles called her at home and asked if he could come over to see her. She testified that she told Charles he could visit and she then went to take a shower. The defendant claimed that when she came out of the shower and went into the bedroom, Charles was in the room sitting on the edge of the bed cutting up drugs. She testified that she told Charles to take his drugs and to leave, but, at that point, the police entered the bedroom. The defendant claimed that when the police entered her apartment, she was walking past Charles and toward the bed. The defendant asserted that when the police entered her bedroom, she jumped onto the

bed and began jumping up and down and screaming. She claimed that when the police entered the room, she had a towel in her hand that she promptly dropped. The defendant testified that she was not lying on the mattress next to Charles when the police entered the room, was not holding a plastic bag and was not in possession of the cocaine with the intent to sell it.

## I

The defendant first claims that the trial court improperly refused to order the state to disclose the identity of two confidential informants who had supplied information to the police that was used in establishing probable cause for the issuance of the search and seizure warrant. The defendant posits that the trial court's refusal was improper because the informants "had placed the responsibility for dealing in cocaine upon one of the state's crucial witnesses," namely, Wosston. The defendant also asserts that the trial court improperly declined "to conduct an in camera examination of those informants in order to determine the extent to which their observations were exculpatory." We are not persuaded.

The following additional information is necessary to our resolution of this claim. In their application for the search and seizure warrant, the police stated that two confidential informants, A and B, had informed the police that drug related activity was taking place at 37-A Lake Street. Informant A told the police that a crack cocaine operation was based at the apartment. Informant A also told the police that a supply of crack cocaine was being kept inside the apartment and that "two females," including "Lisa," were selling the cocaine in front of the apartment. Informant A participated in a controlled purchase of crack cocaine from an unknown male who was selling the cocaine for "Lisa" outside the apartment. Informant B also revealed that a

crack cocaine operation was based at 37-A Lake Street. Informant B participated in a controlled purchase of crack cocaine from a female named "Kiki," who was selling crack cocaine from and residing at the apartment. The application did not reveal that the confidential informants were involved in the drug selling operation allegedly taking place at 37-A Lake Street.

When called on to determine the propriety of a trial court's ruling refusing to order the disclosure to the defendant of the identity of a confidential informant, we must decide whether the trial court abused its discretion in ruling as it did rule. *State* v. *McDaniel,* 176 Conn. 131, 132–33, 405 A.2d 68 (1978); *State* v. *Johnson,* 162 Conn. 215, 229, 292 A.2d 903 (1972). We conclude that, under the circumstances of this case, the trial court did not abuse its discretion in refusing to order the disclosure of the names of the confidential informants.

"The United States Supreme Court's decision in *Roviaro* v. *United States,* 353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957), provides a starting point for our analysis of how courts should balance the state's interest in protecting informants against the defendant's interest in obtaining information useful in conducting his defense. Courts have recognized an informant's privilege. 'What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. . . . The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation. . . .' Id., 59." *State* v. *Richardson,* 204 Conn. 654, 657–58, 529 A.2d 1236 (1987).

"One limitation on this privilege arises from 'the fundamental requirements of fairness. Where the disclosure of an informant's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.' . . . [*Roviaro* v. *United States*, supra, 353 U.S. 60–61]. Thus, when disclosure is required, it is not because of any police misbehavior that must be the subject of a sanction.

"There is 'no fixed rule with respect to disclosure . . . . The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' . . . Id., 62.

" 'Under the *Roviaro* balancing test, case law has delineated the extent to which disclosure "*might* have been helpful to the defense." . . . Before a court will compel disclosure, the informant typically must be a participant in the alleged crime or an eyewitness thereto.' . . . *State* v. *Lee*, 30 Conn. App. 470, 479, 620 A.2d 1303 (1993), aff'd, 229 Conn. 60, 640 A.2d 533 (1994). If the informant, in addition to being a participant or an observer of the crime, claims that the defendant was not the person involved in the crime, disclosure is, of course, all the more necessary. *Roviaro* v. *United States*, supra, 353 U.S. 64–65. 'By contrast, courts generally agree that if the informant provides information to law enforcement officers without any further involvement, disclosure must yield to the protection of the informant.' *State* v. *Lee*, supra, 479. In cases in which

the defendant has distinctly invoked the defense of entrapment, or where the testimony of the informant might show entrapment, disclosure is favored. *Roviaro* v. *United States*, supra, 64; *State* v. *Lee*, supra, 480. However, '[m]ere speculation that the informant's information will be helpful to the defense is not sufficient to mandate disclosure . . . .' *State* v. *Richardson*, [supra, 204 Conn. 663]; see also *State* v. *Harris*, 159 Conn. 521, 529, 271 A.2d 74 (1970), cert. dismissed, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630 (1971). 'The defendant bears the burden of demonstrating the need for disclosure of an informer's identity.' *State* v. *West*, 178 Conn. 444, 446, 423 A.2d 117 (1979)." (Emphasis in original.) *State* v. *Jackson*, 37 Conn. App. 491, 496–98, 656 A.2d 1056 (1995).

Here, there is no indication that the confidential informants were participants in the crimes with which the defendant was charged. The charges against the defendant did not include the *sale* of a narcotic or controlled substance but were limited to *possession with intent to sell*. Moreover, the defendant conceded at trial that the informants were neither witnesses to nor participants in the crimes with which the defendant was charged. Thus, the informants did nothing more than provide the police with information that was included in the application for a search and seizure warrant. It was the evidence that was discovered in the course of the search that gave rise to the defendant's convictions, not the information used to establish probable cause for the warrant. "When the evidence discloses that the informer was merely an informer and nothing more the government is not compelled to disclose his identity." *State* v. *Johnson*, supra, 162 Conn. 229.

The defendant's theory of defense was that the cocaine inside the apartment belonged to Charles, and that, therefore, she could not have been in possession of the cocaine with the intent to sell it. The informants,

however, provided no information to the police that implicated Charles as the owner of the cocaine found in the apartment. The information provided by the informants indicated that the defendant was directly involved in the sale of drugs, a charge not levied against her in this case. Moreover, the fact that the informants implicated Wosston, a witness for the state, as a drug seller operating out of the apartment with the assistance of a man does not mean that the informants possessed exculpatory information as to whether Charles was the sole possessor of the cocaine at issue. Thus, we are left with "only surmise and conjecture . . . as to how the informer[s] could supply information which would be beneficial to the defendant's case." Id.

On the basis of the foregoing facts, we conclude that the trial court properly denied the motion for disclosure of the names of the confidential informants.

The defendant also claims that the trial court acted improperly in refusing to conduct an in camera examination of the confidential informants. Whether to conduct an in camera examination is a decision that is also vested in the sound discretion of the trial court. *State* v. *Richardson*, supra, 204 Conn. 662. An in camera examination is not mandated simply because a defendant makes a request for the names of the informants. Id. "In determining whether to conduct an in camera proceeding a judge must balance the 'public interest in protecting the flow of information against the individual's right to prepare his defense.' *Roviaro* v. *United States*, supra, [353 U.S.] 62. A defendant's interest in having a judge conduct an in camera proceeding is not of constitutional magnitude when an informant is a mere tipster who did not participate in the crime which is being charged. The state has a superior interest in protecting the identity of its informants when the truth

of the testimony offered in proof of the crime itself is not implicated.

"There are serious potential risks involved in conducting an in camera hearing to examine an informant. One should distinguish between in camera proceedings in which a judge merely examines documents or records, and those which require the actual physical presence of an individual. . . . Requiring an informant to attend an in camera hearing involves a substantial risk that his identity will be discovered. Such a hearing would normally require an informant to come to the courthouse. The defendant or his criminal associates may through a variety of means learn when the proceeding is taking place, and observe those who enter the courthouse at that time. Those people who attend the hearing may either intentionally or unintentionally leak information about the informant's identity. Not only may an in camera hearing endanger the informant's safety, but potential informants may be discouraged from revealing information if there is a significant likelihood that they must risk attending such a hearing. Many potential informants may be willing to trust one or two police officers to protect their identity but not the criminal justice system as a whole. In exercising its discretion about the need for an in camera hearing, a trial court should consider the risks that a hearing may present for an informant." (Citations omitted.) *State* v. *Richardson*, supra, 204 Conn. 663–64.

On the basis of our analysis as to why the defendant was not entitled to disclosure of the names of the confidential informants, we also conclude that the trial court properly refused the defendant's request for an in camera examination of the informants.

## II

The defendant next asserts that the state's comment on the defendant's postarrest silence and the trial

court's refusal to deliver a cautionary instruction regarding that comment violated the defendant's due process right to a fair trial. We are unpersuaded.

Certain additional information is necessary to our resolution of this claim. In the course of the defendant's final argument, defense counsel argued: "The police bang on the door. They shout, 'police with a warrant.' They wait about fifteen to twenty seconds. . . . As they advance through the kitchen, they're shouting the whole time, 'Police with a warrant.' There's nothing improper about shouting like this. They do it to warn the residents that they're not burglars. But what is the likelihood that [the defendant] would stand there for at least a half a minute with a bag in her hand waiting for the police to arrive, and then drop it just as they walk in the door? It's far more likely that the noise and the shouting would cause her to do exactly what she said she did, jump up on the bed and scream."

Defense counsel further argued: "Before sending this eighteen year old to prison, before branding her as a convicted felon, before locking her in a cage with people who might be animals, we demand proof beyond a reasonable doubt. She's an eighteen year old who made a bad mistake in her choice of boyfriends. But picking the wrong boyfriend or girlfriend is not a crime. Otherwise we would all be shipped off to jail at some point in our lives. There's a big difference between [the defendant] and us however. . . . When you live on welfare and you live in such neighborhoods, the mistakes that you make are amplified. You pick the wrong boyfriend, you end up in jail. She picked the wrong boyfriend. She was afraid of him. She tried to get away from him. She refused to assist him in hiding his drugs, but she was not guilty of a crime. She should not end up in jail."

In its rebuttal argument, the state asked the jury to use common sense in evaluating the evidence and the

claims of the defendant, and argued, "[A]lthough [the defendant] heard the police coming, she doesn't distance herself from the crack cocaine. She doesn't say to the police, thank goodness you're here. Get that no good, drug dealing, woman beating man out of here. Her testimony is that she's just jumping up and down on the bed. If she heard the police come in, wouldn't she have distanced herself from that a little bit better? Yet the police, three police officers testified as to where she was and where her position is. I submit to you, ladies and gentlemen, if you use your common sense, you'll see right through all of that, right through the defendant's story. You won't—you'll pay heed to the judge's [instruction] that sympathy should have . . . no role in your decision making process, something you all indicated during the voir dire process."

At the conclusion of the arguments the defendant objected to the state's rebuttal argument, claiming that it constituted an improper comment on the defendant's postarrest silence. The defendant requested that the trial court give "an emphatic instruction to the jury . . . that the defendant was not required during—any time during the course of this prosecution to make any statement. She has presented evidence to you. She has testified. And that certainly she was under no obligation. And I guess that's the remedy I want." The trial court did not charge on postarrest silence.[4]

We note at the outset that the defendant cites article first, § 8, of the Connecticut constitution and the fourteenth amendment to the United States constitution in support of her due process claim. She also cites an

---

[4] The trial court did, however, fully and carefully instruct the jury on the defendant's status as a witness and that her testimony was to be weighed and evaluated in the same manner as that of any other witness. The trial court also carefully and correctly instructed the jury that the defendant bore no burden of proof and that the burden rested on the state to prove the defendant guilty by proof beyond a reasonable doubt.

abundance of state and federal case law. The defendant fails, however, to provide us with a separate analysis of her claim under the Connecticut constitution. Because the defendant has failed to provide us with a separate analysis under the Connecticut constitution, we choose not to review this claim under the Connecticut constitution. *State* v. *Scarpiello*, 40 Conn. App. 189, 198 n.4, 670 A.2d 856, cert. denied, 236 Conn. 921, 674 A.2d 1327 (1996). We thus rely on the cases interpreting use of postarrest silence under the federal constitutional mandate only.

"In *Doyle* v. *Ohio*, [426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976)], the United States Supreme Court held that the impeachment of a defendant through evidence of his silence following his arrest and receipt of *Miranda*[5] warnings violates due process. The court based its holding in two considerations: First, it noted that silence in the wake of *Miranda* warnings is 'insolubly ambiguous' and consequently of little probative value. Second and more important, it observed that 'while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.' *Doyle* v. *Ohio*, supra, 617–19. The court recently reaffirmed *Doyle*'s reasoning in *Wainwright* v. *Greenfield*, 474 U.S. 284, 290, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986), in which it held that the defendant's silence following his arrest and receipt of *Miranda* warnings could not be used at trial to rebut his defense of insanity. The court reasoned: 'The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person

---

[5] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. It is equally unfair to breach that promise by using silence to overcome a defendant's plea of insanity.' Id., 292. Consistent with this rationale, the court has concluded that use at trial of silence *prior* to the receipt of *Miranda* warnings does not violate due process. *Fletcher* v. *Weir*, 455 U.S. 603, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982) (postarrest silence); *Jenkins* v. *Anderson*, 447 U.S. 231, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980) (prearrest silence); see *Wainwright* v. *Greenfield,* supra, 291 n.6." *State* v. *Plourde,* 208 Conn. 455, 465–66, 545 A.2d 1071, cert. denied, 488 U.S. 1034, 109 S. Ct. 847, 102 L. Ed. 2d 979 (1988).

Thus, it is clear that "[t]he principles of *Doyle* do not apply where the record fails to indicate that the silence of a defendant has been preceded by a *Miranda* warning . . . . *State* v. *Leecan,* [198 Conn. 517, 524, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986)] . . . . *State* v. *Crosby,* [34 Conn. App. 261, 267, 641 A.2d 406, cert. denied, 230 Conn. 903, 644 A.2d 916 (1994)]." (Internal quotation marks omitted.) *State* v. *Rose,* 41 Conn. App. 701, 711, 682 A.2d 1011 (1996). "[T]he *Doyle* . . . rule has no application unless the defendant has remained silent and could be considered to have done so in reliance on the implied assurances of the *Miranda* warnings. *United States* v. *Crowder,* 719 F.2d 166, 172 (6th Cir. 1983), cert. denied, 466 U.S. 974, 104 S. Ct. 2352, 80 L. Ed. 2d 825 (1984). *State* v. *Joly,* 219 Conn. 234, 256–57 n.15, 593 A.2d 96 (1991)." (Internal quotation marks omitted.) *State* v. *Rose,* supra, 712.[6]

---

[6] The defendant posits that regardless of the *Doyle* rule, we should apply the rule of *State* v. *Ferrone,* 97 Conn. 258, 266, 116 A. 336 (1922), that postarrest silence is inadmissible under principles of the law of evidence. Because "*Ferrone* is grounded upon the rules of evidence and does not purport to establish a constitutional principle"; *State* v. *Leecan,* supra, 198 Conn. 526; and because the defendant's claim is one of constitutional impro-

The portion of the state's rebuttal argument that the defendant claims was improper focused on the defendant's behavior at the precise moment the police entered her bedroom. The record does not reflect that the police recited *Miranda* warnings at that moment. Moreover, the record is devoid as to when, if ever, the police advised the defendant of her *Miranda* rights. Silence that is not the product of reliance on *Miranda* is not protected under *Doyle*. Id. Because there is no evidence that the police advised the defendant of her *Miranda* rights prior to the point in time about which the state commented in its rebuttal argument, we conclude that the defendant's *Doyle* claim is without merit.

### III

The defendant next asserts that the trial court improperly failed to charge the jury on the statutory definitions of "narcotic substance" and "controlled substance." The defendant posits that this failure deprived her of her constitutional right to have the jury determine whether the state has satisfied its burden with respect to each element of the offenses with which she was charged.[7] We disagree.

The defendant was charged with and found guilty of violating § 21a-278 (b)[8] and § 21a-278a (b).[9] Section 21a-278 (b) prohibits the possession of a "narcotic substance" with the intent to sell, while § 21a-278a (b) prohibits the possession of a "controlled sub-

---

priety regarding a prosecutor's comment on rebuttal argument as opposed to one of an evidentiary nature, the defendant's reliance on *Ferrone* is misplaced.

[7] Once again, the defendant has failed to provide us with a separate analysis of this claim under the Connecticut constitution and, therefore, we choose not to review the claim under the Connecticut constitution. *State* v. *Scarpiello*, supra, 40 Conn. App. 198 n.4.

[8] See footnote 1.

[9] See footnote 2.

stance" with the intent to sell within 1500 feet of a school. In its instructions to the jury concerning the elements of the offenses with which the defendant was charged, the trial court instructed, inter alia, "cocaine is a narcotic substance" and "cocaine is a controlled substance."

At the completion of the jury charge, the defendant excepted to the charge, asserting that the trial court had failed to provide definitions of "narcotic substance" and "controlled substance." The defendant claimed that she was entitled to have the court read to the jury the statutory definitions of those terms.[10]

---

[10] General Statutes § 21a-240 (9) provides: " 'Controlled substance' means a drug, substance, or immediate precursor in schedules I to V, inclusive, of the Connecticut controlled substance scheduling regulations adopted pursuant to section 21a-243 . . . ."

General Statutes § 21a-243 (c) provides: "The commissioner of consumer protection acting upon the advice of the Commission of Pharmacy, may by regulation designate, after investigation, as a controlled substance, a substance or chemical composition containing any quantity of a substance which has been found to have a stimulant, depressant or hallucinogenic effect upon the higher functions of the central nervous system and having a tendency to promote abuse or physiological or psychological dependence or both. Such substances are classifiable as amphetamine-type, barbiturate-type, cannabis-type, cocaine-type, hallucinogenic, morphine-type and other stimulant and depressant substances, and specifically exclude alcohol, caffeine and nicotine. Substances which are designated as controlled substances shall be classified in schedules I to V by regulations adopted pursuant to subsection (a) of this section."

Section 21a-243-8 (a) of the Regulations of Connecticut State Agencies lists, as controlled substances in schedule II, "[a]ny of the following substances, except those narcotic drugs listed in other schedules, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by combination of extraction and chemical synthesis . . . (4) coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine . . . ."

General Statutes § 21a-240 (30) provides in relevant part: " 'Narcotic substance' means any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical

After a colloquy among counsel and the trial court, the jury was recalled. The court, in a supplemental charge, reminded the jury that it had heard expert testimony that cocaine is a narcotic substance and a controlled substance. The court instructed the jury, however, that it could accept or reject that testimony and that it should make a factual determination as to the nature of cocaine.[11] At the completion of the supplemental charge, the defendant reiterated her claim that she was entitled to have the statutory definitions of "narcotic substance" and "controlled substance" read to the jury.

We now set forth our standard of review of the defendant's constitutional attack on the trial court's charge. "An improper instruction . . . on an element of an offense, is of constitutional dimension. . . . [T]he standard of review to be applied to the defendant's

---

synthesis . . . (B) cocaine-type, coca leaves and any salt, compound, derivative or preparation of coca leaves, and any salt, compound, isomer, derivatives or preparation thereof which is chemically equivalent or identical with any of these substances or which are similar thereto in physiological effect and which show a like potential for abuse, but not including decocainized coca leaves or extractions of coca leaves which do not contain cocaine or ecgonine . . . ."

[11] In the additional instructions, the trial court charged the jury as follows: "In the first count of the information, the charge is possession of a narcotic substance with intent to sell. It is alleged here that the materials that were possessed was cocaine. It's also a fact for you to determine whether or not cocaine is a narcotic substance. As I recall, there was evidence from Dr. Pinder wherein he said cocaine was a narcotic substance, but that's a question of fact. You can either reject or believe his testimony. Similarly, in the second count where it gets to the charge, doesn't call it narcotic—the statute doesn't call it a narcotic substance. It says possession of a controlled substance with intent to sell within 1500 feet of the school. The materials which are alleged to be in violation of that statute, possession et cetera, is again cocaine. You must factually determine whether or not cocaine is a controlled substance. Again, it's my recollection which doesn't control. It's your recollection that Dr. Pinder testified that cocaine was both a narcotic substance and a controlled substance. It's up to you to determine whether or not that or any other testimony on the subject establishes that fact issue. That is, whether cocaine is a controlled substance."

constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995).

In *State* v. *Vessichio*, 197 Conn. 644, 650, 500 A.2d 1311, cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986), our Supreme Court addressed the issue of whether the trial court properly instructed the jury that "cocaine is a narcotic substance." The court concluded as follows: "The defendant's essential complaint is that the trial court did not 'define the meaning of the words narcotic substance . . . .' With regard to the definition of 'narcotic substance,' the trial court correctly instructed the jury that 'cocaine is a narcotic substance.' Under our law, the jury was not at liberty to conclude otherwise. General Statutes § 21a-240 (30). . . . [I]t was unnecessary for the trial court to define 'narcotic substance' as if the jury were required to determine for itself whether cocaine fell within that definition. The charge was 'correct in law and adapted to the issues,' as our cases require. See, e.g., *State* v. *Mason*, 186 Conn. 574, 585, 442 A.2d 1335 (1982)." *State* v. *Vessichio*, supra, 650.

*Vessichio* pointedly serves to defeat the defendant's claim that the trial court should not have instructed the

jury that "cocaine is a narcotic substance." Moreover, the reasoning in *Vessichio* also works to defeat the defendant's claim that the trial court should not have instructed the jury that "cocaine is a controlled substance." "Under our law, the jury was not at liberty to conclude otherwise." Id., 650; General Statutes § 21a-240 (9); Regs., Conn. State Agencies § 21a-243-8 (a) (4).[12]

After properly instructing that cocaine is both a narcotic substance and a controlled substance, the trial court, in its supplemental charge, also reviewed the evidence and left it to the jury to determine as a question of fact whether cocaine was a narcotic substance and a controlled substance. Thus, the charge gave the defendant more than she was entitled to as a matter of law.

In addition to the proper instructions regarding the nature of cocaine, the trial court set forth the elements of the crimes charged and instructed the jury that, in order to find the defendant guilty of those crimes, it must find that the state has proven each element of those crimes beyond a reasonable doubt. Viewing the charge as a whole, we conclude that it is not reasonably possible that the jury was misled or that an injustice resulted by virtue of the trial court's charge. The claim of the defendant is, therefore, without merit.

IV

The defendant next claims that the trial court improperly refused to permit her to testify that, prior to her arrest in the present case, she had never been arrested for or convicted of any crime. We disagree.

At trial, the state filed a motion in limine requesting that the trial court "prohibit the Defendant from introducing any testimony regarding the Defendant's lack of criminal record and for the fact that she has never

---

[12] See footnote 10.

been arrested." In support of its motion, the state cited *State* v. *McLaughlin,* 132 Conn. 325, 341, 44 A.2d 116 (1945). *McLaughlin* holds that a defendant may not prove *good character* by introducing evidence that the defendant has never been arrested. Id. The defendant filed an opposition to the state's motion, claiming that "[t]he defendant, by introducing evidence of her prior law-abiding nature, is *not seeking to establish her character.* Rather, she seeks to introduce evidence that disproves the state's contention that she exercised control over the substance in question. That she has never been arrested is evidence—admittedly not conclusive, but no evidence ever really is—that she did not have the knowledge, experience, opportunity and occasion to possess and control the substances charged here in the information." (Emphasis added.) The trial court granted the state's motion.

On appeal, the defendant maintains, as she did in the trial court, that she "proffered her lack of arrests and convictions in order to demonstrate that she did not have the experience, knowledge, opportunity, and occasion to possess and control the substances charged." We are unpersuaded.

"It is well established that [t]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. *State* v. *Miller,* 202 Conn. 463, 482, 522 A.2d 249 (1987). The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. *State* v. *Avis,* 209 Conn. 290, 298, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989)." (Internal quotation marks omitted.) *State* v. *Bruno,* 236 Conn. 514, 549, 673 A.2d 1117 (1996).

" 'Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. *Pitt* v. *Kent,* 149 Conn. 351, 357, 179 A.2d 626

(1962). One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. *State* v. *Blake*, 69 Conn. 64, 76, 36 A. 1019 (1897). . . . Evidence is irrelevant or too remote if there is "such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." *State* v. *Kelly*, 77 Conn. 266, 269, 58 A. 705 (1904). A party is not required to offer such proof of a fact that it excludes all other hypotheses; it is sufficient if the evidence tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence. *State* v. *Briggs*, [179 Conn. 328, 333, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980)] . . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence *tend* to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. *State* v. *Miller*, [supra, 202 Conn. 482]; *State* v. *Morrill*, 197 Conn. 507, 548, 498 A.2d 76 (1985).' . . . C. Tait & J. LaPlante, [Connecticut Evidence (2d Ed. 1988)] § 8.1.1, pp. 225–26." (Emphasis in original.) *State* v. *Prioleau*, supra, 235 Conn. 305–306.

We conclude that the trial court did not abuse its discretion in excluding the defendant's testimony that she had never been arrested for or convicted of any crime. We disagree with the defendant's claim that such evidence was relevant to her guilt or innocence. The defendant's testimony concerning her lack of arrests or convictions *prior to September 27, 1994*, could not have logically aided the jury in determining whether she, *on September 27, 1994*, possessed the cocaine that the police found in her presence in her bedroom. The state, in its information, did not allege that the defend-

ant had possessed cocaine at any time other than September 27, 1994. The only evidence relevant to the determination of whether the defendant possessed the cocaine at issue would have been evidence that tended to establish a connection, or lack thereof, between the defendant and the cocaine found in her bedroom on the day of her arrest. The defendant's prior lack of arrests and convictions would not have helped the jury to determine whether such a connection in fact existed. Thus, the defendant's claim that the proffered testimony was relevant to a determination of whether she possessed the cocaine at issue is without merit.

In addition to our conclusion that the defendant's testimony concerning her "law-abiding nature" would not have been relevant to whether she possessed the cocaine at issue, we also conclude that such testimony would have been inadmissible as evidence of her allegedly good character. See *State* v. *McLaughlin*, supra, 132 Conn. 341 ("testimony of two defendants that they had never been arrested was not the proper way to prove their good character and was properly excluded"); *State* v. *Maisonet*, 16 Conn. App. 89, 98, 546 A.2d 951, cert. denied, 209 Conn. 816, 550 A.2d 1086, cert. denied, 489 U.S. 1014, 109 S. Ct. 1127, 103 L. Ed. 2d 189 (1988) ("[s]howing the jury that the defendant 'only' had a prior misdemeanor conviction, which the defendant attempted to do, is not 'good character' evidence which a defendant has the right to introduce when he takes the stand"). Evidence of good character " 'must pertain to the character trait involved in the crime charged, not general good character.' [C. Tait & J. LaPlante, supra, § 8.3.4, p. 238]; *State* v. *Martin*, 170 Conn. 161, 163, 365 A.2d 104 (1976)." *State* v. *Maisonet*, supra, 98; see also *State* v. *Blake*, 157 Conn. 99, 103–104, 249 A.2d 232 (1968); *State* v. *Campbell*, 93 Conn. 3, 10, 104 A. 653 (1918). Any testimony that the defendant had never been arrested for or convicted of a crime

would have been improper evidence pertaining to general good character, as opposed to proper evidence pertaining to the specific character traits involved in the crimes with which she was charged.

V

Finally, the defendant asserts that the trial court improperly excluded evidence that another person, namely, Charles, had entered a guilty plea and was awaiting sentencing for possession with intent to sell the same cocaine that was the subject of the defendant's prosecution. We are not persuaded.

The following information is necessary to our resolution of this claim. Charles was arrested with the defendant on the basis of the same facts and circumstances as set forth herein. He entered a plea of guilty to possession of narcotics with intent to sell. At the time of the defendant's trial, Charles had not yet been sentenced. Prior to the introduction of evidence at the defendant's trial, the state filed a motion in limine to preclude the defendant from introducing evidence of Charles' guilty plea. The defendant argued to the trial court that evidence of Charles' plea might tend to prove that the defendant did not possess the cocaine at issue. The trial court granted the state's motion, thereby precluding the introduction into evidence of Charles' plea.

On appeal, the defendant argues that Charles' guilty plea was relevant because it could have tended to establish that the defendant was not in exclusive possession of her apartment, that Charles had exercised dominion and control over the cocaine, and that Charles controlled the plastic bag into which the cocaine was being placed. We do not agree.

We will not repeat the principles of law that govern our review of evidentiary rulings concerning rele-

vance.[13] We conclude that evidence of Charles' guilty plea lacked relevance and that the trial court did not abuse its discretion in excluding the evidence.

Our examination of the defendant's claims of admissibility leads us to conclude that the defendant offered the evidence of Charles' guilty plea for the purpose of showing that Charles was the sole person guilty of illegally possessing the cocaine in the defendant's bedroom. Our Supreme Court has held that "[t]he fact that [the coparticipant] was convicted . . . in connection with the crimes committed [during a particular incident] does not tend to establish anything about whether the defendant was guilty of the crimes with which he was charged, relative to the same incident. That another [person] may have been punished for the crimes sheds no light on whether the defendant participated in the commission of the crimes. Consequently, [the coparticipant's] conviction . . . should be excluded as irrelevant if offered at . . . trial to show that another person had been convicted in connection with the incident . . . ." *State* v. *Esposito*, 223 Conn. 299, 320–21, 613 A.2d 242 (1992). Thus, the trial court properly excluded the evidence of Charles' guilty plea.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] See part IV of this opinion.